UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:16-cv-00010-GCM

| | | |
|---|---|---|
| **MELISSA PRICE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

THIS MATTER is before the court upon Plaintiff's Motion for Summary Judgment (Doc. No. 9); the Commissioner's Motion for Summary Judgment (Doc. No. 11) and the Plaintiff's Response Brief in Support of her Social Security Appeal (Doc. No. 13). Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

I.      **Administrative History**

Plaintiff filed a Title II application for a period of disability and Disability Insurance Benefits on May 25, 2010, alleging a disability onset date of November 16. Plaintiff's claim was denied both initially and on reconsideration; thereafter, Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to Plaintiff, from which Plaintiff appealed to the Appeals Council. (Doc. No. 8-3 at 2). Plaintiff's request for review was denied, making the ALJ's decision the final

decision of the Commissioner of Social Security ("Commissioner"). (*Id.*) Thereafter, Plaintiff timely filed this action, seeking review of the Commissioner's final decision.

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, *Smith v. Schwieker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales, supra*. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. *Hays v. Sullivan, supra*.

## IV.    Substantial Evidence

### A.     Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same

testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

## B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

(1)     Whether the claimant is engaged in substantial gainful activity;

(2)     Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3)     Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)     Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and

(5)     Whether the claimant is able to do any other work, considering his RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i-v). In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

## C. The Administrative Decision

In rendering his decision, the ALJ first concluded that Ms. Price, the claimant, had not engaged in substantial gainful activity since her alleged amended onset date. (Tr. 22). At the second step, the ALJ found that the claimant suffered from the following severe impairments: fibromyalgia, multiple sclerosis, degenerative disc disease of the lumbar spine, affective disorder,

and anxiety disorder. (*Id.*) The ALJ also noted that the claimant's body mass index classified her as obese under the guidelines from the National Institutes of Health, and the ALJ considered Plaintiff's obesity in her residual functional capacity ("RFC") assessment. (*Id.* at 23). However, there was no evidence that either of these impairments added any limitations to Plaintiff's RFC, so the ALJ classified them as non-severe. (*Id.*) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*).

The ALJ then found that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), "except the claimant is limited to occasionally climbing ramps or stairs, stooping, crouching, and kneeling and should never climb ladders, ropes, or scaffolds or crawl." (Tr. 26). The claimant was also limited "to one or two-step tasks with nor production rate or pace work." (*Id.*). In making this finding, the ALJ considered all of Plaintiff's symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, as required by 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p. (*Id.*) The ALJ also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*) While the ALJ found that Plaintiff's impairments could reasonably be expected to cause the symptoms described in the residual functional capacity assessment, she determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely reliable. (*Id.* at 31).

At the fourth step, the ALJ found that the claimant is unable to perform her past relevant work. (*Id.*). The ALJ determined, based on testimony from a vocational expert, that Plaintiff would

be unable to perform past work because the demands of that work would exceed the residual functional capacity. (*Id*.)

At the final step, the ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.* at 32). The ALJ reached this conclusion after considering the claimant's age, education, work experience, and residual functional capacity in conjunction with the Medical-Vocational Guidelines. (*Id.*) The vocational expert testified that given all these factors, the claimant would be able to perform the requirements of occupations such as an addresser, an order clerk, and a document sorter. (*Id.*). Therefore, the ALJ found that Ms. Price was not disabled under the Act. (*Id.*).

**D.    Discussion**

Plaintiff has made the following assignments of error: (1) whether the ALJ improperly relied on the vocational expert's testimony; (2) whether the ALJ erred in giving little weight to the medical opinion of Dr. Saad; and (3) whether the ALJ improperly evaluated Plaintiff's testimony. Plaintiff's assignments of error will be discussed seriatim.

**1.    The ALJ Gave the Proper Weight to the Vocational Expert's Testimony**

In the first assignment of error, plaintiff contends that the ALJ erred by relying on the vocational expert's ("VE") testimony. Plaintiff argues that the VE erroneously identified jobs with a reasoning level of two, as defined in Dictionary of Occupational Titles ("D.O.T."), despite the fact that he was limited to jobs requiring one or two-step tasks, which could only be jobs with a reasoning level of one. (Doc. No. 9-1 at 5).

This argument fails because "work requiring a reasoning level of two [is] not inconsistent with a limitation to simple work." *Pippen v. Astrue*, 2010 WL 3656002, at *7 (W.D.N.C. Aug. 24,

2010); *see also*, *Courtney v. Colvin*, 2014 WL 1882583, at * 3 (W.D.N.C. May 12, 2014). Level-two reasoning requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." *Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir.2005) citing DOT, Vol. II at 1011. The work required by level-two reasoning "is simple and routine." *Temple v. Callahan, 1997* WL 289457, at *2 (9th Cir. May 29, 1997). Given that the performance of jobs with a level-two reasoning is not inconsistent with a limitation to simple, routine, one or two-step tasks, plaintiff's argument is without merit as a matter of law.

### 2.    The ALJ Gave the Proper Weight to Dr. Saad's Opinion

An ALJ considers the following factors in determining the weight to give to an opinion from a non-treating medical source: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's supportability, particularly by medical signs and laboratory findings; (4) the opinion's consistency with the record as a whole; (5) the medical source's specialization as it relates to his or her opinion; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c).

Plaintiff contends that the ALJ erred by giving little weight to her treating physician's opinion, Dr. Saad. (Doc. No. 9-1 at 7). Dr. Saad opined that the claimant was unable to do more than sedentary work and "would have to rest more than an hour throughout the workday and would miss more than three days per month." (Tr. 30). The ALJ gave little weight to Dr. Saad's opinion finding that "the extreme limitations are inconsistent with the medical records of evidence and Dr. Saad's own records." (*Id.*).

The Fourth Circuit has held that it is not required that a treating physician's testimony is "given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). "[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); see 20 C.F.R. § 404.1527(d)(1). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). "The ALJ must also explain the weight they give to differing assessments." *See Mascio v. Colvin*, 780 F.3d 632, 637 (holding that remand was appropriate when the ALJ did not explain how they concluded that one assessment should be given more weight than another).

There is substantial evidence to support the ALJ ascribing little weight to Dr. Saad's opinion. *See Craig*, 76 F.3d at 590. The ALJ noted that Dr. Saad did treat Ms. Price, but he concluded that the significant inconsistency between Dr. Saad's own examination findings and her opined limitations prevented him from assigning greater weight to her opinions (Tr. 30). Specifically, he noted that Dr. Saad observed that Ms. Price was doing well in March and July of 2012 (Tr. 30 citing 264-65, 270-71) and that, on examination, Ms. Price had no edema, atrophy, or tremors; displayed normal rapid alternating movements and gait; was in no acute distress; and was able to tandem walk and walk on her heels and toes (Tr. 30 citing 366, 368, 393, 395). The ALJ also noted that Ms. Price reported being able to "finish tasks she started," (Tr. 25, 213), which

is inconsistent with Dr. Saad's opinion that she would have difficulty maintaining attention and concentration on tasks during the workday.

Plaintiff contends that the ALJ erred in ascribing little weight to Dr. Saad's opinion for three reasons. First, Plaintiff argues that the ALJ failed to consider Dr. Saad's medical specialty because the ALJ did not mention Dr. Saad's specialty in his opinion. However, an ALJ may consider the specialization of a medical source who rendered an opinion without explicitly stating the medical source's specialization in the decision. *Presnell v. Colvin*, No. 1:12-CV-299-FDW, 2013 WL 4079214, at *5 (W.D.N.C. Aug. 13, 2013).

Second, Ms. Price argues that the ALJ's reliance on Ms. Price's statements that she was "doing well" was unreasonable (Pl. Br. 9). In particular, she argues that, under *Kellough v. Heckler*, 785 F.2d 1147 (4th Cir. 1986), an ALJ may not rely on a physician's notes that a claimant is "feeling well" and engaging in "normal activity" to refute opinion evidence or a claimant's allegations.

*Kellough v. Heckler* states that "the isolated references in the physician's notes to 'feeling well' and 'normal activity' are not a substantial basis for rejecting ... the claimant's subjective complaints of exertional limitation." 785 F.2d at 1153. However, the ALJ utilized far more evidence than "isolated references" to reach his decision as discussed above.

The ALJ in this case relied on objective evidence in assessing the credibility of alleged or opined limitations. (Tr. 30). This objective evidence incudes Dr. Saad's findings that Ms. Price had no atrophy or tremors, had normal rapid alternating movements, and was in no acute distress during examinations (Tr. 30 citing 366, 367, 393, 395). *See White v. Colvin*, No. 3:15- cv-00197-

FDW, 2016 WL 3381265, at *5 (W.D.N.C. June 14, 2016) (holding that *Kellough* is distinguishable when the ALJ also considers evidence beside isolated references to "doing well").

Third, Ms. Price argues that the ALJ erred in relying on normal examination findings because there were indications of intermittent exacerbations in her condition that would render her unable to work (Doc. No. 9-1 at 9-10). Specifically, she argues that there were findings of abnormal gait that the ALJ failed to consider (Pl. Br. 10).

However, Dr. Saad identified the evidentiary basis for each of her opined limitations: Ms. Price's leg weakness and difficulty with ambulation limited her to sedentary work; her fatigue, insomnia, and chronic pain interfered with her concentration and prevented her from maintaining a production pace; and fatigue and pain would cause her to miss more than three days of work per month (Tr. 419). So, the ALJ, included in the RFC the very limitation Dr. Saad said was caused by the abnormal gate, namely an inability to do more than sedentary work (Tr. 26). Ms. Price's argument that the ALJ should have considered Ms. Price's unsteady gait as supportive of Dr. Saad's other opined limitations, such as her in ability to concentrate on tasks and proclivity to miss at least three days of work per month, accordingly fails because Dr. Saad herself explained that it was Ms. Price's putative fatigue, insomnia, and pain — not her unsteady gait — that caused the other opined limitations.

As this court has explained, "'[a]n ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion.'" *McDowell v. Astrue*, No. 3:11-cv-652, 2012 WL 4499336, *3 (W.D.N.C. Aug. 2, 2012) (*quoting Christian v. Apfel*, 168 F.3d 481 (Table), 1998 WL 911720, at *2 (4th Cir. Dec. 31, 1998)

(unpublished)). Here, the ALJ did not "dredge up specious inconsistencies," and provided good reasons for assigning little weight to Dr. Saad's opinions. Accordingly, the ALJ's determination in this regard will not be disturbed.

### 2. The ALJ Properly Evaluated Plaintiff's Credibility

Plaintiff next argues that the ALJ erred in her assessment of Plaintiff's credibility. In determinations of a claimant's credibility, an ALJ is accorded deference. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.").

The ALJ determined that "[t]he credibility of the claimant's allegations is weakened by inconsistencies between her allegations, her statements regarding daily activities, and the medical evidence." (Tr. 31). Ms. Price argues that the ALJ erred in considering Ms. Price's admitted activities of daily living without noting that she was unsuccessful at performing them. (Doc. No. 9-1. 12-13.) Additionally, Ms. Price argues that the ALJ erred in weighing the objective evidence. (*Id.* at 14-15).

Ms. Price contends that she can perform admitted activities only on her good days, which are intermittent, and that even when she does perform them she has limited success in carrying them out (Doc. No. 9-1 12-13). This argument fails because of inconsistencies between her admitted activities and her alleged limitations. For instance, in a function report completed in July of 2012, she stated that she did the dishes and was able to "run errands when needed" (Tr. 208). She additionally stated that she was able to cook complete meals on a weekly basis (Tr. 210). When asked if anything prevented her from preparing meals, she responded, "does not apply" (Tr.

210). When asked in a function report what type of household cleaning she did, she responded that she did "light cleaning" and that the only help she needed was "some help lifting heavy laundry baskets" (Tr. 210). At the hearing, however, she stated that she was unable to do dishes on bad days (Tr. 78), that her husband and children do virtually all of the cleaning except for "wiping down the counters" (Tr. 80), and that her husband "does a lot of the cooking" (Tr. 80). Ms. Price's alleged limitations at the hearing are inconsistent with the admitted activities in her function report.

In addition, Ms. Price's contention that the ALJ did not consider her allegation that she has good days and bad days when he noted that her ability to attend Motley Crew concerts also lacks merit because of inconsistencies with her alleged limitations (Pl. Br. 12). Ms. Price alleged at the hearing that, even on a good day, she can stand for only 15 to 20 minutes (Tr. 78), sit for only 90 minutes (Tr. 78), and walk for only 15 to 20 minutes (Tr. 79). Thus, even on a good day, Ms. Price's alleged functional limitations are inconsistent with attending a concert (Tr. 406).

Finally, Ms. Price's contention that the ALJ was incorrect to find that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations" is not persuasive (Tr. 27; Doc. No. 9-1 at 14). She contends that substantial evidence does not support the ALJ's adverse credibility finding because the MRI findings "support [her] complaints and her treating neurologists' opinions" (Pl. Br. 14). Specifically, she cites 2010 MRI studies of her lumbar spine (Pl. Br. 14 citing Tr. 321); 2012 and 2013 MRI studies of her brain (Pl. Br. 15 citing Tr. 340-41, 397); and 2014 MRI studies of her thoracic and cervical spine (Pl. Br. 15 citing 412-415).

The ALJ mentions all of these MRI studies in his analysis. He goes through what the MRI examinations found and the findings of the additional medical examinations made during that time.

The ALJ's emphasis on Ms. Price's relatively normal physical and neurological examinations in his analysis of the credibility of her reports of "pain in her lower back and right hip, weakness, numbness, and tingling of the right leg" was reasonable (Tr. 28), and his characterization of the examination findings as generally normal is consistent with the record (Tr. 335-36, 338-39, 366, 391, 393, 395).

With respect to the MRI studies of Ms. Price's brain, they show that she has a demyelinating disease (Tr. 397), but they offer no evidence of what functional limitations this disease actually causes. The ALJ considered the MRI studies of Ms. Price's brain and looked to MRI studies of her back and progress notes to assess the impact on her functional ability that her demyelinating disease might have (Tr. 29). The ALJ's analysis was reasonable; he did not omit consideration of any relevant evidence, and the MRI studies of Ms. Price's brain do not compel finding Ms. Price more credible than the ALJ did.

While the medical records contain evidence that the Plaintiff experiences pain and physical difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." *Seacrist v. Weinberger,* 538 F.2d 1054, 1056–57 (4th Cir. 1976). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Mickles v. Shalala,* 29 F.3d 918, 923 (4th Cir. 1994) (citing *Simmons v. Bowen,* 834 F.2d 635, 640 (7th Cir.1987)). This is such a case, as it contains substantial evidence to support the ALJ's treatment of the record and his ultimate determination that the Plaintiff was not disabled.

## V.    Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's motion and brief, Plaintiff's responsive pleading, and Plaintiff's assignments of error.  Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. *See Richardson v. Perales,* 402 U.S. 389 (1971).  Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Id.* at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that

(1)    the decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**;

(2)    Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **DENIED**;

(3)    the Commissioner's Motion for Summary Judgment (Doc. No. 11) is **GRANTED**; and

(4)    this action is **DISMISSED**.

Signed: January 19, 2017

Graham C. Mullen
United States District Judge